*DION PLUMP vs.*

*GOVERNMENT EMPLOYEE INSURANCE CO.*

---

*DEPOSITION OF MEGEN SYNDER*

*September 08, 2023*

---

METROPOLITAN
COURT REPORTERS
COURT REPORTING + LEGAL VIDEO

mcr@metropolitanreporters.com
www.metropolitanreporters.com
913.317.8800 800.748.7511

OUT-OF-TOWN DEPOSITIONS?
WE'VE GOT YOU COVERED!

DEPOSPAN
NETWORK OF LOCALLY-OWNED REPORTING AGENCIES

WWW.DEPOSPAN.COM

EXHIBIT D

happen in depositions that I take, just the cadence of the way that I speak, I tend to pause sometimes in the middle of a question and sometimes the witness thinks that, you know, they know where I'm going and will kind of start to respond before I've completed my question. If that happens, I will let you know and just ask that you try to be mindful of that. And of course, I'll extend the same courtesy that if I start to ask a question before you've had a chance to fully respond to my previous question, please just let me know. I want to make sure you have the opportunity to fully answer anything that I ask. Understood?
A Yes, ma'am.
Q Ms. Snyder, what did you do to prepare for your deposition today?
MS. STEELMAN: I'm going to object to the extent it calls for any attorney-client communication. You can answer the question as long as it doesn't go into any details you've had with counsel.
BY MS. PAULUS:
Q Absolutely. I'm not asking for any details of what you've discussed with counsel. Just asking if you met with counsel.



A Met with counsel about just kind of the outline of what a deposition is.
Q Okay. And did you prepare any documents in preparation for your deposition today, Ms. Snyder?
A No, ma'am.
Q And where are you currently employed?
A GEICO.
Q How long have you worked for GEICO?
A 13 years.
Q And where within the country are you located?
A Virginia Beach, Virginia.
Q What's your current job title?
A HR leave specialist.
Q Ms. Snyder, have you held any other job titles during your career with GEICO?
A Yes, ma'am. Previous to this, I was the Virginia Beach mailroom supervisor. Before that, I was an underwriter tech. And before that, I was a phone customer service representative for the military department.
Q And throughout your career with GEICO, have you always been located at the Virginia Beach, Virginia location?
A That's correct.



Q How long have you been in your current position with GEICO?
A Approximately two years. One and a half, yeah.
Q Ms. Snyder, can you give me just a high-level summary or overview of what your current job responsibilities are in your current position?
MS. STEELMAN: Objection. Form. You can answer.
A We receive requests for protected leaves like FMLA. I only do FMLA. So we send the paperwork to them letting them know if they're eligible or not. Then we tell them what they have to do, such as sending in completed paperwork. If we get completed paperwork, we send them an approval or denial based off the paperwork. If we don't get paperwork, then we send them a denial because they didn't turn in the paperwork.
BY MS. PAULUS:
Q And just to clarify. When you're saying send paperwork to them, are you referring to associates or employees of GEICO?
A Yes, ma'am.
Q Ms. Snyder, I have an understanding that at some point GEICO contracted with or had some sort of



a relationship with The Hartford for purposes of FMLA leave processing. Is that correct?
A That's correct.
Q And do you recall when that relationship ended or at what point in time The Hartford was no longer administering or processing FMLA leave absences for GEICO employees?
A Yes, ma'am.
Q And what was that date?
A It's a multi-point answer because they stopped handling the FML and ADA claims as of -- I believe it was January, 2021. At which point they continued to process any long-term disability -- or, I apologize -- short-term disability claims. So there was a little overlap for a while.
Q And so, your recollection is that The Hartford stopped administering or stopped handling the FMLA and ADA claims at the beginning of 2021; is that correct?
A Yes, ma'am. I don't remember exact date. I think it was January 2nd. But it could have been the 1st. I'm not positive.
Q And after The Hartford stopped handling FMLA and ADA claims for GEICO, was there another third-party administrator that GEICO used to process

Page 9

those?
A No, ma'am, not that I'm aware of.
Q And so, instead of The Hartford, were those being administrated -- were FMLA and ADA claims being administered internally by GEICO? Is that what the change was?
A Yes, ma'am.
Q Ms. Snyder -- I'll share my screen here. I'm going to introduce what I'm going to mark as Plaintiff's Exhibit 25. This may take just a moment here.
(Document displayed on screen.)
Let me know if I need to zoom in or out. Can you see my screen, Ms. Snyder?
A Yes, ma'am.
Q And I'll represent to you that this is -- this exhibit is an e-mail that the Plaintiff --
A Katherine, I apologize. Can I interject?
Q Yes.
A I told you the date was 2021. I think that's wrong. I think it was 2022.
Q No, that's fine, but thank you for that clarification.
A I apologize.
Q And you kind of anticipated my next

Page 10

question. But I'll represent to you that this is an e-mail that was produced by the Plaintiff in this lawsuit, Dion Plump. As you can see, the Bates number here -- and, Courtney, this is Plump 50 through 52.
MS. STEELMAN: Thank you.
Q And, Ms. Snyder, do you recall seeing Exhibit 25 before?
A No.
Q And it appears to be an e-mail sent from GEICO Corporate HR to some sort of distribution list, and dated Wednesday, December 29th, 2021. Is that correct?
MS. STEELMAN: Objection. Form. You can answer if you know.
A I -- I'm not sure.
BY MS. PAULUS:
Q Okay. I'm just asking if you can see here on the screen?
A Yeah, I can see what's on the screen.
Q Okay. And it has the subject line of Important Information Regarding Your Leave Claim?
A Yes, ma'am.
Q And I just want to give you a moment to review just this first page here, Plump 50. Can you

Page 11

let me know when you've had a chance to review it? And let me know if I need to zoom in or out to make it easier to read.
(Pause)
A Okay. I've read it.
Q And so, earlier, you had clarified that the date that The Hartford was no longer processing -- or, administering -- excuse me -- FMLA and ADA accommodation requests for GEICO associates, was at the end of 2021; is that correct?
A Yes, ma'am.
Q And so, this e-mail here, would you agree with me that just based on what you've reviewed, it appears to be an e-mail sent from GEICO to employees who -- notifying them, those who had had a leave or accommodation claim pending with The Hartford as of the date of that e-mail, December 29, 2021, informing them about the end of The Hartford administering those claims. Is that correct?
MS. STEELMAN: Objection.
Q Would you agree with me?
MS. STEELMAN: Pardon me, Katherine. Objection. Form. You can answer if you know.
A I wasn't a part of the e-mail process, but that's what it looks like.

Page 12

BY MS. PAULUS:
Q So, in the bolded and highlighted language here, it states: "Unless your claim with The Hartford is for a continuous, i.e., non-intermittent absence that began in 2021, your request with them will be closed."
Did I read that correctly?
A Yes, ma'am.
Q I also wanna ask you to review this second page of Exhibit 25. Let me know when you need me to scroll down. I'm trying to get it to where you can best see it here.
(Document displayed on screen.)
A Okay. I've read what's on the screen.
Q Thank you. I'm gonna just scroll down so you can see the remainder of that page, that last section. Let me know when you've had a chance to review the last section that wasn't visible before.
(Document scrolling on screen)
(Pause)
A Okay.
Q And this second page of Exhibit 25 appears to be kind of a breakdown of different leave scenarios and how it will be impacted by The Hartford, depending on what the individual -- by The

Page 13

Hartford no longer administering leaves, depending upon what the individual employee's situation is. Is that correct?
A Yes, ma'am.
Q And so, I wanna ask you to look at this section here that I'm highlighting with the heading Pending or Approved Intermittent FML Claims. And the first sentence states: "Intermittent absences already approved by The Hartford, including future absences, will not require rereview."
Did I read that correctly?
A Yes, ma'am.
Q Then I want to point to further down in that paragraph where it starts: "Claims for intermittent absences made to The Hartford but not yet approved as of December 31st, 2021 will be closed and transferred to GEICO."
Did I read that correctly?
A Yes, ma'am.
Q And then the final sentence states: "Associates with a pending intermittent claim must provide their completed medical paperwork to the GEICO leave team for review. (Contact information provided below)."
Did I read that correctly?

Page 14

A Yes, ma'am.
Q And I just wanted to ask: The GEICO leave team, would you be considered a part of the GEICO leave team?
A Yes, ma'am.
Q And so, when The Hartford stopped administering FMLA claims for GEICO employees, at that point, any of those pending intermittent claims or any of the other leave claims that are referenced here, those were transferred to the GEICO leave team, including possibly yourself. Is that correct?
A Anything --
MS. STEELMAN: Objection. Hold on one second, Megen, if you don't mind. Objection. Form. Speculation. You can answer if you know.
A Per this document, intermittent claims were transferred to leave teams.
BY MS. PAULUS:
Q And do you recall, at that time, were you a member of the GEICO leave team at this time at the end of 2021?
A Yes, ma'am.
Q And so, at that time, did you receive some of these claims that may have been pending but not yet approved by The Hartford for GEICO intermittent

Page 15

FMLA claims?
A I did not receive -- start receiving claims until January.
Q Okay. I understand your clarification. Until actually after that change had occurred. So, January of 2022; is that correct?
A Yes, ma'am.
Q And do you recall -- I'm gonna stop sharing my screen here. Ms. Snyder, do you recall interacting ever with the Plaintiff in this lawsuit, Mr. Dion Plump?
A The name sounds familiar. And we reviewed some documents that refreshed my memory a little bit, but I don't remember in great detail.
Q And do you recall what documents you did review?
MS. STEELMAN: Objection. To the extent that this calls for any attorney-client privileged communication, please do not answer. But you can answer the question to the extent it doesn't disclose any of that communication.
BY MS. PAULUS:
Q Right. And to clarify. I'm not asking about the content of any communications that you had with GEICO's attorneys. I'm just asking if you

Page 16

recall any specific documents that you reviewed to refresh your recollection?
A E-mail communications, questions that he had.
Q And answering GEICO associate questions about their leave, I believe you stated earlier that was one of your job responsibilities in your position as a leave specialist; is that correct?
A Yes, ma'am.
Q I want to go back to the -- make sure I understood. Earlier, I believe you clarified that the transition of the administration of FMLA leave and ADA leaves through The Hartford, at that time, The Hartford continued to administer short-term disability for GEICO employees; is that correct?
MS. STEELMAN: Objection. Form. You can answer.
A I apologize, Katherine. You're breaking up.
BY MS. PAULUS:
Q Okay. Sure. So, I was just trying to make sure I understood --
WITNESS: Courtney, can you hear me?
MS. STEELMAN: I can hear you.
WITNESS: Hello?

A That's correct.
Q And it's dated January 7th, 2022; is that correct?
A Correct.
Q And so you said that's a standard kind of form e-mail. And in this case, sent from you to the Plaintiff in this lawsuit, Dion Plump, concerning his leave case; is that correct?
A That's correct.
Q So, this e-mail would have been sent shortly after The Hartford transition when they were no longer processing FMLA leaves for GEICO's employees; is that correct?
A That's correct.
MS. STEELMAN: Objection. Form.
BY MS. PAULUS:
Q And so, here, you're informing Mr. Plump that he's eligible for leave under the FMLA and providing him some information about the process and the deadlines; is that correct?
A Yes, that's correct.
MS. STEELMAN: Objection. Form.
BY MS. PAULUS:
Q And so, there's a reference here -- there are a couple of bullet points. Under the "Even



better news! We have made it easy for associates and their providers to return documentation." And it lists two different ways that providers can return FMLA documentation. Is that correct?
MS. STEELMAN: Objection. Form.
BY MS. PAULUS:
Q I'm sorry. I didn't hear you, Ms. Snyder. Did you --
A Yes.
Q That second bullet point refers to I-sight Claim Submission Portal. What is that?
A That's how he would have created his case to let us know that he needed leave.
Q And so, for those GEICO employees who had a pending FMLA leave request with The Hartford that had not yet been approved that was then transferred to the GEICO leave team, did those employees have to go in and re-request that leave? Or was that automatically transferred over to the GEICO leave team?
MS. STEELMAN: Objection. Form. You can answer if you know.
A I don't remember.
BY MS. PAULUS:



Q And so, here, the next e-mail up on this thread appears to be from you to the same individuals, including the Plaintiff in this lawsuit, Dion Plump, on the same date, January 7th, 2022, regarding his leave. And you state: "I apologize for any confusion in the last e-mail. The due date is 1/22/22, not 2/22/22. It was listed correctly on the attached paperwork."
Did I read that correctly?
A Yes, ma'am.
Q Okay. So, there, you're just clarifying that there was a typo in the original form e-mail; is that correct?
A Yes, ma'am.
Q So I'll scroll up to the next chronological e-mail in this thread.
(Document scrolling on screen.)
I'll give you a chance to review this. And, here, I'm just talking about this highlighted portion. Let me know when you've had a chance to read it.
(Pause)
A Okay.
Q And, Ms. Snyder, this appears to be an e-mail from e-mail address for Dion Plump responding



back to you stating -- sent on January 21st, 2022, stating: "I've been receiving ongoing treatment, but today was the earliest appointment I could get with my PC doctor. We went over the paperwork and she mentioned she is sending it in today."
Did I read that sentence correctly?
A Yes, ma'am.
Q And then he goes on to state: "Can you let me know on Monday if you've received it?"
Did I read that correctly?
A Yes, ma'am.
Q Okay. So, I'm gonna scroll up to the next e-mail chronologically. Let me know when you've had a chance to review this here.
(Document scrolling on screen.)
(Pause)
A I've read it.
Q And so, here, this appears to be an e-mail from you responding back to Dion Plump, sent on January 21st, 2022, where you're stating that you checked but hadn't received the documents from his provider that he referenced in his earlier e-mail. Is that correct?
A That's correct.
Q And then you're giving him a suggestion on

having him call his provider's office and having them fax it to the company again and possibly e-mail it to you. Is that correct?
A Yes.
Q Okay. I'll stop sharing my screen here.
Ms. Snyder, the e-mail thread we just looked at, that kind of exchange about paperwork from a medical provider or a healthcare provider supporting an employee's request for FMLA leave, is that an example of kind of a typical question that you would get from a GEICO employee who had requested FMLA leave?
MS. STEELMAN: Objection. Form. You can answer if you know.
A It is typical to have the associate check if paperwork is received.
BY MS. PAULUS:
Q And it was typical for them to check with you as a leave specialist for GEICO?
MS. STEELMAN: Objection. Form. You can answer if you know.
A Somewhat.
BY MS. PAULUS:
Q Ms. Snyder, I'm gonna share my screen again.



(Document displayed on screen)
I'll show you what I'm marking as Plaintiff's Exhibit 27. This is GEICO 280. I'm gonna ask you to review this document and let me know when you've had a chance to read over it.
(Pause)
A Okay.
Q And Ms. Snyder, do you recognize this document?
A It's a form e-mail.
Q And in this case, it's a form e-mail sent by you; is that correct?
A That is correct.
Q And this one is sent on -- or, to Dion Plump, Plaintiff in this lawsuit, regarding the -- his leave case; is that correct?
A That is correct.
Q And, here, this form e-mail is notifying Mr. Plump that his request for FMLA leave has been approved and providing him with the terms of that approval. Is that correct?
A That is correct.
Q And you said it's a form e-mail. There doesn't appear to be any kind of date on here. This looks kind of like a screen shot or something. Do



you recall if this is sent as a typical e-mail from your e-mail address to an employee's e-mail address?
A It is typically sent from my e-mail address to the employee, and their manager and their supervisor are copied on the e-mail.
Q I'll stop sharing my screen.
Okay. Ms. Snyder, I'm gonna share my screen again and I'm gonna show you what I'm marking as Plaintiff's Exhibit 28.
(Document displayed on screen.)
And I'll represent to you -- this is Plump 78. And I'll represent to you this is an e-mail produced in this lawsuit from the Plaintiff during the course of discovery. I wanna ask you to look that over. Let me know when you've had a chance to review it.
A I've reviewed it.
Q And, Ms. Snyder, this appears to me to be -- all of the text of this document appears to be the same as what we just looked at, that form e-mail that you referenced as Plaintiff's Exhibit 27, but this one actually has a date of January 21st, 2022, and has the e-mail addresses reflected on that. Is that correct?
A Appears to be.



Q And so, as you stated, this form e-mail is sent to the employee requesting leave as well as their supervisor and manager; is that correct?
A I can't be positive that that's the supervisor and the manager; but, yes, it appears to be.
Q So that's just -- I stopped sharing my screen.
Is that the typical practice that any kind of approval, denial, things like that that -- notifications that the -- that you're sending to GEICO employees who requested FMLA leave, the typical practice is to send it to the employee who requested it as well as their supervisor and manager?
A That is correct.
Q And I'm gonna share my screen again, Ms. Snyder. Ask you to look at what I'm marking as Plaintiff's Exhibit 29. And this is Plump 77.
(Document displayed on screen.)
And this is, again, an e-mail thread. You can see the earlier e-mail is at the bottom. I'm gonna ask you to review the entire e-mail thread that I have on my screen here. Let me know when you've had a chance to review it, Ms. Snyder?