**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| DION PLUMP,<br><br>Plaintiff,<br><br>v.<br><br>GOVERNMENT EMPLOYEES INSURANCE COMPANY d/b/a GEICO,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 22-cv-02498 |

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant Government Employees Insurance Company ("GEICO") provides the following Reply in Support of its Motion for Summary Judgment ("Motion").

# TABLE OF CONTENTS

**Pages**

I. INTRODUCTION 3

II. STATEMENT OF UNCONTROVERTED FACTS 5

A. GEICO's Statement of Facts ........ 5

B. Plump's Additional Statement of Facts ........ 8

III. ARGUMENT 11

A. Plump Cannot Establish Claims of Race Discrimination Under Title VII or § 1981; Therefore, Summary Judgment Should be Granted in Favor of GEICO on Counts VI and VIII. ........ 12

B. Plump Cannot Establish Claims for FMLA Discrimination or Interference; Therefore, Summary Judgment Should be Granted in favor of GEICO on Counts I and II. ........ 17

1. Plump Fails to Make a *Prima Facie* Case to Support a Claim of FMLA Discrimination........ 17

2. Plump Does Not Address His FMLA Interference Claim; Therefore, Summary Judgment Should Be Granted in Favor of GEICO. ........ 18

C. Plump Cannot Establish the GEICO Retaliated Against Him Due to an Alleged Disability or Protected Activity; Therefore, Summary Judgment Should be Granted in Favor of GEICO on Count V. ........ 20

IV. CONCLUSION 21

## I. INTRODUCTION

Plump's Memorandum in Opposition to Defendant's Motion ("Plump's Opposition" or the "Opposition") is littered with immaterial information not relevant to Plump's claims. When Plump's additional facts and arguments are stripped to their core, it is clear that he cannot establish a *prima facie* case for any of his claims against GEICO. And, even if he could make that threshold showing, he cannot meet his ultimate burden of showing the decision to terminate his employment was motivated by unlawful discrimination or retaliation. Therefore, GEICO is entitled to summary judgment on all of Plump's claims.

First, despite Plump's claims in his Opposition to the contrary, he cannot demonstrate a *prima facie* case of race discrimination under Title VII or §1981. Plump lacks evidence of race discrimination. The record evidence shows that he was not qualified to continue as a MOAT Sales Representative because he admittedly did not have the required New York license for his position. Further, not only did GEICO tell Plump that this license was necessary, but his own actions – attempting to apply for the license – shows his awareness of the importance of the license and his acknowledgment that the license was required for his position. Simply, Plump cannot demonstrate that the circumstances surrounding the termination of his employment create even an inference of discrimination. GEICO provided a legitimate, non-discriminatory reason for the termination of his employment. Despite his attempts otherwise, Plump cannot argue that others were treated differently because his situation was unique to his role and his GEICO location: he was the only MOAT Sales Representative who (1) did not have the required New York license, and (2) did not have the ability to even obtain the license because of his failure to follow up with the New York Department of Financial Services ("NYDFS") after they attempted to contact him multiple times.

Second, Plump cannot establish claims for FMLA discrimination (or "FMLA retaliation") because there is no record evidence that supports his claim. GEICO approved Plump's request for intermittent FMLA leave. In fact, GEICO provided Plump with more leave than required by his healthcare provider's FMLA certification. Additionally, some of the individuals who provided input or decisions that affected Plump's employment or department were unaware of Plump's FMLA usage or leave status. And discussions about Plump's work performance and/or his failure to obtain and maintain a New York license took place at least as soon as October 2021, well before Plump provided any indication to GEICO that he needed FMLA leave in mid-December 2021.

Moreover, Plump's claim of FMLA interference fails because, regardless of whether the *McDonnell-Douglas* burden-shifting analysis applies to this claim, Plump's Opposition fails to address the issue or respond to GEICO's arguments as to this claim.

Finally, Plump cannot establish that GEICO retaliated against him under the ADA. Not only did Plump fail to formally request a reasonable accommodation, but there was also no causal connection between any protected activity and the termination of his employment. In fact, even without a formal request, GEICO accommodated Plump by providing him FMLA leave and additional leave beyond the approved FMLA leave – despite Plump's misrepresentations that he was in the hospital (when he was not).

For these reasons, Thus, GEICO's Motion, as to Plump's discrimination claims, FMLA claims, and ADA retaliation claim, should be granted in favor of GEICO.

## II. STATEMENT OF UNCONTROVERTED FACTS[1]

To aid this Court's review of the undisputed material facts relevant to GEICO's Motion, GEICO provides the following addressing the facts asserted by both parties. **Section A** provides GEICO's Replies to Plump's Responses to GEICO's Statement of Uncontroverted Material Facts ("SUMF")[2]. **Section B** provides GEICO's Responses to Plump's additional statement of facts ("Plump's SUMF")[3]. As can be seen from those sections, the material, admissible, and properly supported statements of fact relevant to GEICO's Motion are not in genuine dispute and support the entry of Summary Judgment in favor of GEICO on all of Plump's claims.

### A. GEICO's Statement of Facts

**"Uncontroverted" therefore, deemed admitted per Fed. R. Civ. P. 56 and Local Rule 56.1(b):** 1, 2, 4, 5, 6, 7, 8, 9, 10, 12, 13, 15, 16, 17, 18, 21, 22, 23, 24, 25, 26, 27, 28, 29, 31, 33, 35, 36, 40, 42, 43, 46, 47, 48, 49, 51, 52, 53, 54, 55, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85, 86, 87, 88, 89, 90, 91, 93, 95, 97, 99, 100, 102, 103, 104, and 106.

**Plump does not specifically controvert these statements of fact as required per Fed. R. Civ. P. 56 and Local Rule 56.1(b); therefore, they are deemed admitted:** 3, 11, 32, 41, 44, 50, 56, and 92.

---

[1] Notably, Doc. 55, Plaintiff's Index of Exhibits in Support of His Memorandum in Opposition to Defendant's Motion for Summary Judgment was filed stamped on December 16, 2023 – the day following the filing deadline of Plump's Opposition.

[2] Because Plump does not controvert many of GEICO's stated facts, such facts are deemed admitted pursuant to Fed. Rule of Civ. P. 56. For those facts Plump purports to controvert, he fails to point to any evidence in the record to demonstrate an actual "dispute" or offers his own self-serving, immaterial denials and opinions which do not contradict the undisputed record.

[3] All of Plaintiff's alleged "Additional Facts" are immaterial, are based upon a mischaracterization of deposition testimony, and/or are not sufficient to create a genuine issue of material fact for trial because they consist of Plaintiff's own conclusory, self-serving opinions or speculation, and/or lack factual support in the record.

**Plump does not specifically controvert these statements of fact as required per Fed. R. Civ. P. 56 and Local Rule 56.1(b) and fails to cite to evidence to properly convert the statements of fact:** 19, 30, 34, 94, 96, 98, 101, and 105.

**These facts are specifically stipulated to by both parties in the Pretrial Order that this Court entered on October 17, 2023 (Doc. 28). Additionally, Plump does not specifically controvert these statements of fact as required per Fed. R. Civ. P. 56 and Local Rule 56.1(b); therefore, these facts are deemed admitted:** 14 and 20.

**Plump's Responses to these facts are immaterial; therefore, these facts are deemed admitted:** 11, 19, 37, 38, 39, 41, 45, 56, 96, 98, 101, 102, and 105.

**Additional and Supplemental Replies to the Above:**

**REPLY 11:** Plump agrees Paragraph 11 contains the reason for termination given in February 2022. Plump's additional response is immaterial and misstates the content of the exhibit relied upon.

**REPLY 19:** First, Plump cites to deposition testimony of his supervisor – not a peer – that discusses her understanding of a process she does not supervise. (Selg Dep. at 12:15 – 13:24.) Second, Plump cites to his own, self-serving deposition testimony that does not controvert any part of the fact contained in Paragraph 19. The additional information provided by Plump is immaterial. Therefore, the fact is deemed admitted.

**REPLY 30:** Plump testified that he "believe[s]" it was email and does not remember what email address. The other information provided by Plump in his Response is immaterial. The fact is deemed admitted.

**REPLY 34:** That Plump *felt* a certain way does not controvert the supported fact, and the additional information provided by Plump is immaterial. The fact is deemed admitted.

**REPLY 37:** Plump's response to Paragraph 37 that it was his former employer and not him is immaterial. The fact is deemed admitted per Fed. R. Civ. P. 56 and Local Rule 56.1(b).

**REPLY 41:** Plump does not specifically controvert the fact that Plump testified that there "could be" more occasions where he transferred calls where he was licensed in the state of the caller as required per Fed. R. Civ. P. 56 and Local Rule 56.1(b). Additionally, Plump presents immaterial information regarding different types of policies. Therefore, there is no genuine issue of fact. The fact is deemed admitted.

**REPLY 44:** Plump does not specifically controvert the fact that Ms. Selg's email stated that Plump was the only agent that had licensing problems. Further, it appears Plump makes reference to GEICO 1320 but does not include this document as supporting evidence. The fact is deemed admitted.

**REPLY 45:** Plump does not controvert the first and second sentence of the fact. As to the third sentence, specifically, Ms. Beaver testified that "if that was the case," that "California call avoidance is occurring through the California transferred calls" or "if [she] saw calls recorded that were transferred out where he was able to handle," then "that [term] is the path that I would then take." Beaver Dep. 45:19-46:6. Plump's response is immaterial. The fact is deemed admitted.

**REPLY 92:** Plump fails to cite evidence that specifically controverts Paragraph 92, as required per Fed. R. Civ. P. 56 and Local Rule 56.1(b), which is supported by Plump's own sworn testimony. Specifically, as Plaintiff concedes, Plump assumed race "might have had a factor." Plump Dep. 239:3-340:6. The fact is deemed admitted.

**REPLY 96:** Additionally, GEICO does not dispute the additional testimony Plump presents in his Response. However, it is immaterial. The fact is deemed admitted.

**B. Plump's Additional Statement of Facts**

**"Uncontroverted and immaterial" RESPONSES:** 1, 2, 4, 5, 8 and 9 (but *see* Response to Paragraph 7), 10, 11, 13, 14, 15, 18, 21, 23, 25, 26, 29, 31, 33, 34, 35, 36, 38, 41, 42, 43, 44, 45, 46, 49, 50, 53, 54, and 58.

**RESPONSE 3:** Controverted but immaterial. In both of the deposition transcripts citations, Plump is referring to supervisors other than his own supervisor at the time of the termination of his employment. Therefore, there is no genuine issue of fact.

**RESPONSE 6:** Controverted in that Plump has not provided evidence to support the purported fact in Paragraph 6. The deposition transcript discusses licensing units "responsible for assisting the licensing process for MOAT sales agents." Emphasis added. Nowhere in the cited record does it state these teams "handled" "requests and requirements" for MOAT Sales Representatives. However, Paragraph 6 is immaterial.

**RESPONSE 7:** Controverted in that Plump has not provided evidence to support the purported fact in Paragraph 7. Specifically, the cited deposition testimony only states that Plump's denial was not uploaded to the file. Nowhere does the record state GEICO received copies of correspondence from the New York State Department of Financial Services. Additionally, the cited letters (GEICO 565-571) all show Plump's personal address or his work address with his name following the "Attn:" line. However, Paragraph 7 is immaterial.

**RESPONSE 12:** Uncontroverted that Plaintiff testified to his "feelings." However, controverted in that Plump did not provide record evidence to support that Ms. Selg was "nitpicking him" or "out to get him." However, Paragraph 12 is immaterial.

**RESPONSE 16:** Uncontroverted that Plump was counseled on call avoidance as the exhibit indicates. Controverted in that Plump does not provide evidence to support that it was

Ms. Selg rather than "his previous supervisor" who had a conversation with Plump about call avoidance. However, the controverted portion is immaterial.

**RESPONSE 17:** Uncontroverted except controverted in that Plump does not provide evidence to support "about accepting Plaintiff in a transfer to a service position." The controverted portion is immaterial.

**RESPONSE 19:** Controverted in that Plump does not provide evidence to support that the review is by a "local" Human Resources. The rest of Paragraph 19 is uncontroverted. The controverted portion is immaterial.

**RESPONSE 20:** Controverted in that Plump does not provide evidence to support that he was "never subject to any formal discipline during his employment." The rest of Paragraph 20 is uncontroverted. The controverted portion is immaterial.

**RESPONSE 22:** Controverted in that Plump does not provide evidence to support who the "you" is that Ms. Urban and Ms. Beaver is referring – if the "you" is Ms. Beaver or if the "you" refers to the service hiring manager; but it is uncontroverted that this is what the document relied upon for Paragraph 22 states. The controverted portion is immaterial.

**RESPONSE 24:** Controverted in that the cited record does not state that Ms. Beaver "identified herself as the decisionmaker," which is immaterial. The remainder of Paragraph 24 uncontroverted.

**RESPONSE 27:** Uncontroverted that Plump stated he interviewed for service on "Dec 1st" to Ms. Urban in an interview on December 15, 2021.

**RESPONSE 28:** The cited record does not support Paragraph 28 as required per Fed. R. Civ. P. 56 and Local Rule 56.1(b); therefore, controverted but immaterial.

**RESPONSE 30:** Controverted in that Plump does not provide record evidence to support "since November." The remainder of Paragraph 30 is uncontroverted. The controverted portion is immaterial.

**RESPONSE 32:** Controverted in that Plump does not provide evidence to support "without warning" and "increase in the amount of flood insurance calls received." The remainder of Paragraph 32 is uncontroverted. The controverted portion is immaterial.

**RESPONSE 37:** Uncontroverted that Paragraph 37 contains Plump's own testimony stating he was diagnosed as having mild major depression and anxiety. The record does not contain any medical records to support this testimony.

**RESPONSE 39:** Plump did not provide GEICO 1521 in the cited record evidence, and GEICO 1522 does not appear to be "text messages." Additionally, Plump also did not provide evidence showing that Plaintiff's FMLA request was denied on January 12, 2022. Despite these deficiencies, the fact is uncontroverted.

**RESPONSE 40:** The cited testimony does not support Paragraph 40 as required per Fed. R. Civ. P. 56 and Local Rule 56.1(b). Therefore, controverted but immaterial.

**RESPONSE 47:** Uncontroverted that Mr. Reed forwarded a list that purports to show the top states by volume of sales on December 20, 2021. However, this list, without additional information –which is not provided by Plump to support the stated fact, does not indicate what sales population this accounts for (i.e., all MOAT Sales Representatives or those in Plump's population); therefore, this fact is immaterial.

**RESPONSE 48:** Plump does not provide the cited Selg's deposition testimony or the cited Beaver deposition testimony in his attached exhibits. Therefore, controverted but immaterial.

**RESPONSE 51:** Controverted but immaterial and incomplete as these exhibits exhibit multiple "ratings," including a 2.6 in Productivity (GEICO 000421), a 2.7 in Productivity (GEICO 000423), and 2.6 in Productivity (GEICO 001183).

**RESPONSE 52:** Controverted in that Plump's provided exhibits do not indicate there were calls or texts constantly "while he was on leave." Uncontroverted that the rest of Paragraph 52 is Plump's own testimony. The controverted portion is immaterial.

**RESPONSE 55:** Controverted because Plump's cited evidence does not support that "he followed his supervisor's direction to let the licensing team handle any issues that arose with his state licensing." GEICO 353-354 states that "I wasn't diligent in submitting the requested paperwork for my NY license because my supervisor at the time requested that I maintain readiness on the phone and let licensing handle the matter." Regardless, Paragraph 55 is immaterial.

**RESPONSE 56:** Uncontroverted that the licensing team assisting in applying for state licenses.

**RESPONSE 57:** Uncontroverted that there are emails between GEICO's team members that show discussions related to the communication regarding the status of licensing. Controverted because Plump does not provide record evidence that indicates: (1) there was "frequent, ongoing communication;" (2) that there were licensing denials – other than Plump; and (3) that there were other MOAT Sales Representatives other than Plaintiff missing "required" state licenses for "long" periods of time. The controverted portion is immaterial.

## III. <u>ARGUMENT</u>

In his Opposition, Plump attempts to muddy the record and cause confusion as to the real issues central to his claims. His offered irrelevant information about extraneous people and events fails to demonstrate the existence of any genuine issues of material fact for trial. GEICO

urges the Court to focus on three main points: (1) Plump's claims of race discrimination (Title VII and §1981) fail as a matter of law because he has no direct or indirect evidence of discrimination; (2) both of Plump's FMLA claims fail because there is no evidence in the record to support discrimination or interference and because Plump failed to respond to the interference claim; and (3) Plaintiff's retaliation claim fails because Plump cannot establish that GEICO retaliated against him under the ADA.

### A. Plump Cannot Establish Claims of Race Discrimination Under Title VII or §1981; Therefore, Summary Judgment Should be Granted in Favor of GEICO on Counts VI and VIII.

To support his *prima facie* case, Plump must point to evidence in the record showing: (1) he is a member of a protected class; (2) he was qualified for his position; (3) he was subjected to an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 792-93 (1973); *Equal Emp't Opportunity Comm'n v. BCI Coca-Cola Bottling Co.*, 450 F.3d 476, 783-84 (10th Cir. 2006); *Singh v. Cordle*, 936 F.3d 1022, 1037 (10th Cir. 2019).

In his Opposition, Plump argues that the requirements for a *prima facie* showing are "flexible and non-burdensome" and that they should not be "onerous" on Plaintiff. While that may be true, Plump fails to point to record evidence to support each of the mandatory elements. GEICO concedes that Plump was a member of a protected class and that he was subjected to an adverse employment action (the February 2022 termination of his employment). However, Plump still has not shown that he was qualified for his position or that the circumstances of the adverse employment action give rise to an inference of discriminatory intent. Plump notes that an "inference of discriminatory discharge arises if an employee who belongs to a racial minority . . . . eliminates the two most common, legitimate reasons for termination, i.e., lack of qualification

or the elimination of the job." *Washington v. U.S. Bank Nat'l Ass'n*, No. 2:18-CV-02646-EFM, 2020 WL 5942313, at *3 (D. Kan. Oct. 7, 2020). *Washington* continues by stating, "[a]ccordingly, a prima facie case of discriminatory discharge generally requires that the plaintiff produce evidence that: (1) she belongs to a protected class; (2) she was qualified and satisfactorily performing her job duties; (3) despite her qualifications, she was fired; and (4) her position was not eliminated after her discharge." *Id*.

This is where Plump fails.

Plump was not qualified because he, admittedly, did not have a required license for his position as a MOAT Sales Representative. As detailed further in GEICO's Motion, Plump was required to obtain and maintain required licenses issued by the insurance departments in various states. (SUMF 12.) GEICO considers New York a required state of licensure in the MOAT Sales Department. (SUMF 14.) Plump was aware of this requirement, yet he did not have a New York license during his employment with GEICO. (SUMFs 15 and 18.)

Plump argues that this should not matter. Citing *EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1193 (10th Cir. 2000), Plump asserts that "[w]here an employee's failure to meet objective, employer-imposed criteria is one of the legitimate, non-discriminatory reasons advanced by an employer to dispel the inference of discrimination raised by an employee at the prima facie stage, it cannot also be used to defeat the employee's prima facie case." He argues this would "collapse" the first and second stages of the *McDonnell Douglas* analysis and deny the plaintiff the opportunity to demonstrate that GEICO's explanation for the termination of his employment is pretextual. However, in *EEOC v. Horizon*, the Court was presented with an employer-imposed objective qualification "that [had] no relation to the performance of the job at issue;" therefore, it was "irrelevant at the prima facie stage of the *McDonnell Douglas* inquiry

because it [did] not compel the conclusion that the plaintiff suffers from an 'absolute or relative lack of qualifications.'" *Id.* (Emphasis added.) Instead, at the *prima facie* stage, the Court asks not whether an employee is able to meet all the objective criteria from an employer, "but whether the employee has introduced some evidence that she possessed the objective qualifications *necessary to perform the job* . . ." *Id.* Again, this is where Plump fails. Plump did not and cannot provide any evidence that he possessed the qualifications necessary for his job. He attempts to flood the record with immaterial statistics in an attempt to show that he was functioning without his New York license. But, as GEICO explains in its Responses to Plump's SUMF, these statistics purporting to be satisfactory performance evaluations do not show the entire picture – especially because, as GEICO points out, Plump was consistently under performing in the "Productivity" section of his work performance evaluations, achieving "Fair" ratings – which is the second lowest tier. (Plf. Exhibit 11, GEICO 1182-1183, 421, and 423.) Just because Plump *feels* he was performing his job satisfactorily does not mean he was. A plaintiff's own opinion about his qualifications does not create a genuine dispute of material fact. *Shapolia v. Los Alamos Nat. Lab.*, 992 F.2d 1033, 1039 (10th Cir. 1993). And the record evidence, largely based on Plump's own admissions, supports GEICO's position for the termination of his employment. The key issue here is that he simply did not have the required qualifications, his New York license, to hold his role:

- Plump knew a New York license was required for his position. (SUMF 15.) This is exhibited by his June 2020 attempt to apply for a New York License shortly after he started his employment with GEICO. (SUMF 19.)

- Plump failed to follow up with the NYDFS on multiple occasions when they attempted to contact him for additional information pertaining to his license application. (SUMFs 20 – 28.)

- Plump failed to respond to communication (which was only sent to *him*); therefore, he was prohibited by the NYDFS from reapplying for a New York license for one year. (SUMF 31.)

- In November 2021, an email was sent between upper management professionals asking why certain associates – including Plump – had a "QTC" below 60 percent as no associates should be below 60 percent. (SUMF 43.)

- In response, Plump's supervisor indicated that he was the only agent that had licensing problems as he was denied his New York license and his transfer rate percentage was currently above 50 percent month to date. (SUMF 44.)

- In early December 2021, after further examination into Plump's QTC, GEICO determined he had a 50 percent transfer rate due to license and 20 percent call avoidance rate. (SUMF 45.)

Plump's lack of a New York license was an objective qualification necessary to perform his job. The statistics show that this license was "truly required" to do the job at issue. *Id* at 1194 citing *Anderson v. Zubieta*, 180 F.3d 329, 342 (D.C. Cir.1999). And Plump cannot satisfy his *prima facie* burden by demonstrating he had his New York license. *Id*. Although he argues he was satisfactorily performing his job without the license, the record does not support this contention. Shortly after he began working for GEICO, he began to apply for his New York license. While he continued to work, his transfer rates were above the required threshold. After investigating why his productivity was low (which is one of the many factors in his performance evaluations), GEICO determined it was directly related to his lack of New York license – which was a current business need of GEICO and as outlined in the MOAT Sales Representative job description. As indicated by Plump's own actions, he knew in early 2020 that he needed the New York license.

Similarly, in many professions which require a license, license holders must exercise due diligence to ensure they are *maintaining* their license even if someone else (or their employer) helped them *obtain* their license. Plump's argument is nothing more than his attempt to shift the blame – demonstrating a historical pattern of behavior by him. Plump, in his own sworn testimony, admitted that his North Dakota state license was "suspended" after the state did not receive responses to letters they sent requesting additional documentation or information.

(SUMF 37.) Even then, he testified it was his former employer – not him – that failed to see the letters. (Plump's Response to SUMF 37.) Accepting Plump's testimony, North Dakota sent the letters to his former employer. (Plump's Response to SUMF 37.) Related to his New York license, Plump was the only recipient of the letters sent from the NYDFS. (GEICO's Response to Plaintiff's SOF 7.) Yet, he tries to blame GEICO for his failure to respond.

Lastly, Plump argues that he does not need to present racial comments or offer comparators to demonstrate an inference of discrimination. Rather, Plump contends an inference of discrimination can be shown by "a variety of circumstances" ranging from actions or remarks by decisionmakers to the timing of events leading to his termination. Without providing additional context, Plump argues that the timing and sequence of events leading to the termination of his employment shows an inference of discrimination. Even accepting Plump's alleged facts, there is nothing to raise an inference of race discrimination. For example, GEICO attempted to find another department for Plump to work in, when they did not have to. It was only after being questioned about his licensing failures that Plump even raised any "concerns" with GEICO. Plump admits, and the parties have stipulated, that those "concerns" did not include any mention of race. (Fact Stipulation xvi and SUMFs 47 – 50).

Because Plump has failed to meet his burden to offer facts to support the elements of a *prima facie* case; GEICO is entitled to summary judgment in its favor on Plump's race discrimination claims (Counts VI and VIII).

### B. Plump Cannot Establish Claims for FMLA Discrimination or Interference; Therefore, Summary Judgment Should be Granted in favor of GEICO on Counts I and II.

#### 1. Plump Fails to Make a *Prima Facie* Case to Support a Claim of FMLA Discrimination.

To support a claim of FMLA discrimination (or "retaliation"), Plump must show that he (1) engaged in a protected activity; (2) that GEICO took an action that a reasonable employee would have found materially adverse; and (3) that a causal connection exists between the protected activity and the adverse action. *Johnson v. Norton Cnty. Hosp.*, 550 F. Supp. 3d 937, 966 (D. Kan 2021). The parties do not contest that Plump requested, was approved for, and used intermittent FMLA leave. (SUMF 71.) The parties do not contest this is "protected activity." And the parties do not contest that Plump was terminated from his employment at GEICO. However, Plump does not and cannot show any causal connection between his request and/or use of FMLA leave and the termination of his employment.

Plump's only argument is based on timing. Specifically, Plump argues there was only a one-and-a-half-month window of time that elapsed between the date he requested his FMLA paperwork and the date of his termination (and that there was two to three weeks between the date his leave was approved and his termination). But his argument ignores the complete timeline which is important:

- June 2020: Plump attempted to complete his New York license application shortly after starting employment at GEICO (SUMFs 15 and 19).
- February 2021 – November 2021: NYDFS attempted numerous times to contact Plump regarding his New York license application. (SUMFs 20 – 32.) During this time, Plump had issues with call transfer percentage and QTC. (SUMFs 43 – 45.) (Call avoidance contributes to QTC.) (SUMF 45.)
- Late October 2021 – Early November 2021: GEICO investigates and learns Plump is ineligible to reapply for the New York license for one year from denial date. (Plf. Exhibit 4, GEICO 535.)

- November 2021 – GEICO conducts audit of Kansas City MOAT Department calls. (SUMFs 43-45.)

- November 29, 2021 – Ms. Beaver asked Ms. Selg to submit a warning for Plaintiff for call avoidance. (Plump's SUMF 18.)

- December 2, 2021 – Ms. Selg submitted a call avoidance warning for Plaintiff. (Plump's SUMF 19.)

- December 7, 2021 – After review of audit, GEICO determined Plump's transfer rate could lead to termination of his employment. (SUMF 45.)

- December 15, 2021 – Only after learning his job was in jeopardy did Plump email GEICO's Human Resources Department asking about FMLA leave. (SUMF 58.)

- On January 21, 2022, GEICO approved Plump for FMLA intermittent leave retroactively from December 17, 2021, to September 21, 2022, after Ms. Snyder followed up with Plump about his documentation. (SUMFs 70 and 71.)

- February 9, 2022 – GEICO terminated Plump's employment for not having the required licenses to maintain employment as a MOAT Sales agent. (SUMFs 7 and 11.)

As shown by the undisputed timeline, Plump had issues with his license (a required qualification for his job) and call avoidance/transfers long before he requested, applied for, or took FMLA leave. It was not until after GEICO prepared a warning for him and after he felt his job was on the line that he requested FMLA leave. Simply, when viewing *all* of the facts material to his FMLA discrimination claim, it is apparent there is no causal connection between Plump's protected activity and the termination of his employment. Therefore, GEICO did not discriminate against Plump based on his FMLA use, and GEICO is entitled to summary judgment on Count I.

**2. Plump Does Not Address His FMLA Interference Claim; Therefore, Summary Judgment Should Be Granted in Favor of GEICO.**

The word "interference" only appears three times in Plump's 42-page Opposition filing: twice when stating that the *McDonnell Douglas* burden-shifting analysis does not apply and once in a footnote explaining that FMLA "discrimination" and "retaliation" would be used synonymously in his briefing and distinguishing those from "interference." No where else does

Plump discuss his FMLA interference claim (Count II). Just because *McDonnell Douglas* does not apply to the claim does not mean that Plump can ignore responding to GEICO's argument regarding Plump's lack of evidence to support his alleged claim of FMLA interference. Plump still has an obligation to attempt to demonstrate that he had a right to FMLA leave, that GEICO took an adverse action that interfered with his right to take FMLA leave, and that the adverse action by GEICO was related to the exercise or attempted exercise of a FMLA right. *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1180 (10th Cir. 2006).

As noted above, Plump and GEICO agree Plump requested and GEICO approved his request for intermittent FMLA leave. Specifically, on December 15, 2021, after Plump had been made aware of licensing issues affecting his performance, Plump contacted GEICO's Human Resources to ask about FMLA leave. (SUMF 58.) He was provided the paperwork. (SUMF 59.) And he was given directions on how to return the completed paperwork. (SUMF 60.) Clearly, at this time, GEICO did not interfere with Plump's FMLA rights.

In the weeks that followed, Ms. Snyder was in contact with Plump, giving him updates regarding deadlines, providing him updates on the status of documents received by GEICO, and assisting in giving him advice to follow up with his doctor. (SUMFs 67-70.) GEICO did not interfere with Plump's FMLA rights. Additionally, GEICO permitted Plump to exceed his approved FMLA leave of one-day episodes up to two times a month when he was absent from work for 42 consecutive days. In its Motion, GEICO also presented record evidence that shows the termination of Plump's employment was not related to his exercise or attempted exercise of his FMLA rights. Again, Plump first requested FMLA information on December 15, 2021, which was *after* he learned his missing license was causing issues with the status of his job (and which ultimately led to the termination of his employment).

Plump appears to have abandoned his FMLA interference claims because he failed to provide any substantive argument to support it. Regardless, the record evidence shows there is no genuine issue of material fact and summary judgment should be granted in favor of GEICO on Plump's FMLA interference claim (Count II).

### C. Plump Cannot Establish the GEICO Retaliated Against Him Due to an Alleged Disability or Protected Activity; Therefore, Summary Judgment Should be Granted in Favor of GEICO on Count V.

In his Opposition, Plump ties in his argument for ADA retaliation to his FMLA discrimination argument. Plump provides no new evidence to support his ADA retaliation claims (which is similar in elements to the FMLA discrimination claims). In his Complaint, Plump alleged that he engaged in protected activity by reporting disabilities to GEICO and requesting a reasonable accommodation of taking time off while he was being treated for disabilities. (Pl's Complaint P. 116.) In his Opposition, for the first time, Plump states he engaged in protected activity under the ADA "when he requested the reasonable accommodation of a medical leave of absence under the FMLA related to his depression and anxiety."

Both parties agree: Plump never formally requested a reasonable accommodation. However, as noted in GEICO's Motion and above in Section B, GEICO worked with Plump even after multiple misrepresentations about the status of his medical treatment (i.e., telling GEICO on numerous occasions that he was checking into a hospital when he was not actually checking into a hospital). GEICO helped Plump apply for FMLA and permitted him to use his approved leave. Even when Plump went beyond his approved intermittent FMLA leave (SUMF 72.), GEICO did not terminate him for missing 42 consecutive days of work. (SUMF 26.) However, as noted above, long before Plump requested information regarding FMLA from GEICO, there had been issues with Plump's licensure status and call avoidance and transfer rates. Simply, there were no "shifted rationales." The consequences of Plump's actions and work

performance all flow from one central issue: Plump did not have his required New York license, Plump's performance metrics were poor due to call transfers and avoidance which can be attributed to lack of required licensure, and after Plump was no longer eligible to obtain a New York license due to his lack of follow through with the NYDFS, GEICO decided to move forward with the termination of his employment.

Plump cannot establish a claim that GEICO retaliated against him due to any protected activity under the ADA. Accordingly, GEICO is entitled to summary judgment on Count V.

## IV. CONCLUSION

GEICO respectfully requests this Court enter judgment as a matter of law in favor of GEICO on all of Plaintiff's claims under Title VII, § 1981, the FMLA, and the ADA, and for any other relief the Court deems just and proper.

Respectfully Submitted,

*/s/ Courtney Steelman*
Jenna P. Brofsky KS Bar No. 27989
Julianne P. Story KS Bar No. 15227
Courtney Steelman KS Bar No. 79001
Husch Blackwell LLP
4801 Main Street, Suite 1000
Kansas City, MO 64112
Telephone: (816) 983-8000
Facsimile: (816) 983-8080
Jenna.Brofsky@huschblackwell.com
Julianne.Story@huschblackwell.com
Courtney.Steelman@huschblackwell.com

**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

This is to certify that on the 9th day of January 2024, the above and foregoing was filed via the Court's electronic (ECF) filing/notification system which will cause a copy to be served on all parties of record.

*/s/ Courtney Steelman*
**Attorney for Defendant**