**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 16, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

DION PLUMP,

Plaintiff - Appellant,

v.

GOVERNMENT EMPLOYEES INSURANCE COMPANY, d/b/a GEICO,

Defendant - Appellee.

No. 24-3091

---

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 2:22-CV-02498-EFM)**

---

Grace Bushong and Mallory Shaner (Matthew Cushing, Counsel of Record, and Adam Hunt with them on the briefs), University of Colorado Law School Appellate Advocacy Practicum, Boulder, Colorado, for Plaintiff–Appellant.

Jenna P. Brofsky (Julianne P. Story and Courtney Steelman with her on the brief), Husch Blackwell LLP, Kansas City, Missouri, for Defendant–Appellee.

---

Before **HOLMES**, Chief Judge, **MURPHY**, and **McHUGH**, Circuit Judges.

---

**MURPHY**, Circuit Judge.

---

## I. INTRODUCTION

Dion Plump, a Black male, filed this civil rights suit against his former employer, Government Employees Insurance Company ("GEICO"). In relevant part,

Plump alleged GEICO (1) retaliated against him in violation of the (a) Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2615(a)(2)[1] and (b) Americans with Disabilities Act ("ADA"), *as amended by*, the ADA Amendments Act of 2008 ("ADAAA"), Pub. L. No. 110–325, 122 Stat. 3553 (codified at 42 U.S.C. § 12203(a))[2]; and (2) discriminated against him based on his race in violation of (a) 42 U.S.C. § 1981 and (b) Title VII of the Civil Rights Act of 1964, 42 U.S.C §§ 2000e to 2000e-17.[3] Employing the burden-shifting framework set out by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973),[4] the

---

[1] *See Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1170 (10th Cir. 2006) (distinguishing between FMLA entitlement/interference claims, which arise under § 2615(a)(1), and retaliation/discrimination claims, which arise under § 2615(a)(2)).

[2] For an explanation of changes to the ADA made by the ADAAA, see *Adair v. City of Muskogee*, 823 F.3d 1297, 1304-06 (10th Cir. 2016). The ADAAA is the "governing version of the ADA." *Id.* at 1304. Thus, this court refers to Plump's disability-related retaliation claim as an ADAAA claim. *See Dewitt v. S.W. Bell Tel. Co.*, 845 F.3d 1299, 1303 n.1 (10th Cir. 2017).

[3] The availability of a Title VII remedy does not foreclose relief under § 1981. *Meade v. Merchs. Fast Motorline, Inc.*, 820 F.2d 1124, 1125-27 (10th Cir. 1987) (per curiam) ("[A] plaintiff may properly pursue his cause of action under § 1981 for private employment discrimination despite the applicability of Title VII to the same conduct."); *see also Heno v. Sprint/United Mgmt. Co.*, 208 F.3d 847, 858-59 (10th Cir. 2000) (holding that *Meade* is reinforced by the Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1072 (codified at 42 U.S.C. § 1981a)).

[4] *McDonnell Douglas*'s burden-shifting framework has three steps.

> First, the plaintiff must establish a prima facie case of discrimination or retaliation. Second, the employer must proffer a legitimate, nondiscriminatory reason for the adverse employment action. And third, the plaintiff must show there is at least a genuine issue of material fact as

district court granted summary judgment in favor of GEICO. It concluded Plump's Title VII and § 1981 claims failed because Plump did not identify sufficient evidence to support a prima facie case of race discrimination. It concluded Plump's FMLA and ADAAA retaliation claims failed because Plump did not adduce sufficient evidence to allow a reasonable juror to find that GEICO's stated nondiscriminatory reason for the termination was pretextual.

Plump appeals, asserting the district court erred in granting summary judgment in GEICO's favor. This court agrees the district court erred in concluding Plump did not establish a prima facie case of race discrimination. In particular, the district court erred in concluding the fact Plump's insurance-sales position remained open after his discharge did not create an inference of discrimination. *See Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1229 (10th Cir. 2000); *Perry v. Woodward*, 199 F.3d 1126, 1135, 1140 (10th Cir. 1999). This error is harmless, however, because (1) the district court's ruling that there was insufficient evidence of pretext to support Plump's FMLA and ADAAA retaliation claims applies equally, under the circumstances here, to his Title VII and § 1981 discrimination claims[5] *and* (2) the

---

> to whether the employer's proffered legitimate reason is genuine or pretextual.

*Jenny v. L3Harris Techs., Inc.*, 144 F.4th 1194, 1198 (10th Cir. 2025) (quotations and internal citations omitted).

[5] Plump recognizes as much in his opening brief on appeal, stating as follows:

> [T]he district court granted summary judgment on [Plump's] race discrimination claims at the prima facie stage . . . and[,] therefore[,] did

district court correctly ruled that Plump failed to create a genuine issue of fact as to pretext. *See Champagne Metals v. Ken-Mac Metals, Inc.*, 458 F.3d 1073, 1088 (10th Cir. 2006) (holding this court has discretion to "affirm [the district court's judgment] on any ground adequately supported by the record"). Thus, exercising jurisdiction pursuant to 28 U.S.C. § 1291, we **affirm** the district court's order granting summary judgment to GEICO.

## II. BACKGROUND

### A. Factual Background[6]

On June 8, 2020, GEICO hired Plump to work as a sales representative in Lenexa, Kansas. GEICO's sales representatives sell insurance by telephone to customers across the United States. Accordingly, they are required to obtain and maintain licenses issued by various states' insurance departments. During the relevant period, sales representatives received 9.98% of their calls from New York,

---

> not reach [Plump's] pretext arguments. . . . [T]he district court did reach his pretext arguments as to his retaliation claims, holding that [Plump] failed to present sufficient evidence from which a juror could find GEICO's stated reason for firing him was pretext. Because the same evidence and arguments apply to the pretext analysis for both claims . . . , [Plump] will address together all of the evidence he introduced demonstrating that GEICO's stated reason for firing him was pretext.

Appellant's Opening Br. at 36 n.13 (italics and internal citation omitted).

[6] As did the district court, this court draws the general background facts from the parties' factual stipulations, which are set out in the pretrial order. Any additional alleged legitimate issues of material fact are discussed below in resolving Plump's appellate contentions.

making it the second most frequent state from which customers call for GEICO insurance. For that reason, GEICO expected its sales representatives to obtain and maintain a New York license. Indeed, GEICO told Plump that having a New York insurance license was important to his role as a sales representative.

Three days after GEICO hired Plump, he applied for a New York insurance license. On February 5, 2021, the New York Department of Financial Services ("NYDFS") sent Plump a letter indicating it received his application, but discovered he failed to report he was involved in a "fine, denial, refusal, suspension, or revocation" of his North Dakota license. NYDFS requested that Plump submit specific information and documentation regarding that issue within fifteen days. Plump stipulated that he did not respond to this letter. On July 21, 2021, NYDFS sent Plump a follow-up letter stating it had not received a response and indicating his application would be denied unless it received the requested information by August 6, 2021. Plump stipulated that he did not respond to this letter. On August 9, 2021, NYDFS sent Plump a letter stating his application was denied because he demonstrated untrustworthiness within the meaning and intent of New York insurance law. The letter informed Plump he had until August 24, 2021, to appeal the decision by requesting a hearing. Plump never attempted to appeal the application denial. After the appeal timeframe passed, Plump was prohibited from reapplying for a New York license until August 9, 2022.

NYDFS sent GEICO's Dallas Licensing Team a copy of the denial letter, but the Dallas Licensing Team failed to upload it to Plump's file. This error, among

others, resulted in GEICO firing the Dallas Licensing Supervisor and creating a new Kansas City Licensing Team to resolve local deficiencies and outstanding applications. Plump never informed the Kansas City Licensing Team that New York rejected his application. On October 27, 2021, the Kansas City licensing team discovered NYDFS rejected Plump's application. When GEICO contacted NYDFS to seek an extension, NYDFS told GEICO the appeal timeframe had passed. On November 3, 2021, GEICO management met with Plump to tell him that, without a New York license, he could not remain in his sales position. Management indicated it would explore the possibility of transferring Plump to a role in the Service Department.

On November 17, 2021, Plump's direct supervisor, Allison Selg, responded to a request by GEICO management for a report regarding Plump's performance and attendance. The report revealed Plump generally averaged a "good" score on his overall performance ratings. That same day, GEICO conducted an audit of the Sales Department's calls. The audit revealed Plump's call transfer percentage was high, his quote to call ("QTC") percentage was low,[7] he was the only representative with licensing problems, and he was denied his New York license. Plump was interviewed for the Service Department position on December 1, 2021. Shortly after, GEICO informed Plump he did not get the service job. On December 7, 2021, Selg's

[7] The record indicates "quote to call is the number of or the percentage of quotes that an associate generates in relation to the number of calls they receive[.]" R. at 169.

supervisor, Meghan Beaver, met Assistant Vice-President Lee Foskey to discuss Plump's performance. The meeting revealed Plump's high transfer rate was mostly due to call avoidance and licensing issues. That is, fifty percent of Plump's transfers were due to his licensing issues and twenty percent were due to call avoidance. After the meeting, Beaver was instructed to investigate Plump's call avoidance and proceed with the intention to terminate him on that basis or for the licensing issue.

On December 10, 2021, Plump emailed the GEICO Human Resources Department, raising concerns about the handling of his New York license, his interview with the Service Department, and his working relationship with Selg. Later that day, Human Resources met with Plump to discuss his concerns. During this meeting, Plump did not raise any concerns about race discrimination. On December 15, 2021, Plump contacted Human Resources to ask about FMLA leave. Human Resources sent Plump the required paperwork and explained the process for reporting a leave claim. Plump was told it was his responsibility to maintain and return the required leave documentation. The next day, Plump messaged Selg and informed her that he was going to check into a hospital, would be out sick, and was in the process of filing for FMLA leave. Plump never checked into the hospital on that date and did not report to work for the following forty-two days.

On January 7, 2022, GEICO Leave Specialist Megen Snyder emailed Plump to inform him he was eligible for FMLA leave; she asked him to return all required paperwork by January 22, 2022. Based on Plump's paperwork, Snyder informed him GEICO approved him for FMLA leave. On January 21, 2022, GEICO retroactively

approved Plump for FMLA intermittent leave from December 17, 2021, to September 21, 2022. Plump's approved FMLA leave was limited to one-day episodes up to two times a month, with two doctor appointments a year.

By December 22, 2021, GEICO concluded its investigation into Plump's Human Resources complaint. The investigation included witness interviews with various members of GEICO's licensing and supervision teams and several of Plump's peers. GEICO concluded Plump was held to the same standard as all Sales Representatives. Due to holidays, Plump's absence from work, and Plump rescheduling meetings, Human Resources was unable to meet with him to discuss the results of the investigation until February 2, 2022. That same day, Beaver reminded Plump his management team would be reviewing his employment due to the rejection of his New York insurance license and invited him to submit a written statement containing any information he wanted them to consider. Plump submitted a written statement later that day.

On February 3, 2022, Beaver emailed human resources requesting approval to terminate Plump because he failed to obtain his New York license, failed to inform his supervisor that New York rejected his license, and failed to appeal the New York licensing decision within a timely manner. The next day, Plump told Selg he was "getting checked back into the hospital." He did not check into a hospital on that date or any other date. On February 8, 2022, Human Resources sent Beaver a memorandum which, pending approval from Foskey, would terminate Plump's employment. Beaver attempted to call Plump the next day, but Plump did not answer

his phone. Instead, Plump instructed his emergency contact to tell Beaver he was unavailable because he was in the hospital for an extended period. Again, Plump never checked into a hospital. Unable to reach Plump on February 9, 2022, GEICO sent him a letter the following day informing him his employment was terminated.

**B. Procedural Background**

**1. Discrimination Claims**[8]

GEICO moved for summary judgment on Plump's discrimination claims. GEICO argued, inter alia, Plump could not establish a prima facie case under *McDonnell Douglas*'s burden-shifting framework. According to GEICO, Plump failed to come forward with sufficient evidence to create a fact question as to Plump's prima facie case because (1) his lack of a New York license rendered him unqualified for the sales position and (2) the absence of evidence of race-based comments or differently-treated comparators meant the circumstances surrounding Plump's termination did not give rise to an inference of discrimination. Alternatively, GEICO contended it stated a legitimate nondiscriminatory reason for Plump's termination—his failure to obtain a New York license—and Plump failed to come forward with sufficient evidence of pretext to create a genuine issue of material fact.

Plump opposed GEICO's request for summary judgment on his discrimination claims. As to the question whether he made out a prima facie case, Plump asserted he

[8] The same legal framework applies to Plump's Title VII and § 1981 discrimination claims. *Payan v. United Parcel Serv.*, 905 F.3d 1162, 1168 (10th Cir. 2018).

carried his burden under this court's decision in *Kendrick*, 220 F.3d at 1229. Plump noted that, pursuant to *Kendrick*, he could make out a prima facie case by showing: "(1) he belongs to a protected class; (2) he was qualified for his job; (3) despite his qualifications, he was discharged; and (4) the job was not eliminated after his discharge." *See id.* In that regard, Plump noted it was undisputed he is a member of a protected class—"Black/African American"—and was discharged from employment with GEICO. Furthermore, he argued he was prima facie qualified for the sales job under the non-onerous test set out in *Kenworthy v. Conoco, Inc.*, 979 F.2d 1462, 1471 (10th Cir. 1992). Finally, Plump asserted the fact the sales position was not eliminated after his termination created the necessary inference of discrimination, *Kendrick*, 220 F.3d at 1227. As to pretext, Plump asserted, as set out more fully below in discussing the procedural history of his retaliation claims, *see infra* Section II.B.2., that he submitted sufficient evidence for a jury to rule in his favor.

The district court granted summary judgment to GEICO on Plump's Title VII and § 1981 claims on the basis Plump failed to establish a prima facie case of discrimination. As relevant for the purposes of this appeal, the district court ruled Plump failed to show the timing and sequence of his termination gave rise to an inference of race discrimination.[9] *See Plotke v. White*, 405 F.3d 1092, 1101 (10th Cir.

---

[9] Employing the very type of non-onerous test advocated by Plump, the district court concluded Plump established a prima facie case he was qualified for the sales position. In so ruling, the district court relied on Plump's own testimony he was performing satisfactorily in the position, together with Plump's adequate performance appraisal ratings. Furthermore, focusing on what it concluded a jury could find were the objective qualifications necessary to perform the sales job rather

2005) (setting out a nonexclusive list of circumstances that can create an inference of "discriminatory motive"). To begin, the district court concluded any failures on the part of the Dallas Licensing Team associated with Plump's inability to obtain a New York license were not unique to Plump or indicative of discrimination. Those failures impacted a broad swath of Kansas employees. GEICO dealt with the problem by terminating the Dallas Licensing Team and creating a new licensing team in Kansas City. Furthermore, the district court could perceive no hint of discrimination in GEICO's decision to consider discipline during the period in which Plump stopped attending work. The district court noted that during the lengthy period of non-attendance, Plump had not received approval to take anything other than intermittent time off from work, did not tell his supervisors he was approved for leave, and did not tell his supervisors when he would return. Additionally, the district court noted the record was devoid of evidence of any type of racially negative comments during the entirety of Plump's employment by GEICO. And, finally, the district court determined there was no record evidence indicating the failed process of trying to transfer Plump to the service department was in any way inconsistent with past GEICO practice.

---

than all the objective criteria adopted by GEICO, *see generally EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1193 (10th Cir. 2000), the district court concluded Plump "presented evidence demonstrating that he had enough insurance licenses to satisfactorily service clients—albeit not New York clients—for the 20 months that he worked at GEICO." R. at 484. This, according to the district court, meant Plump "presented enough evidence to meet the low threshold for establishing the second element of his prima facie case." *Id.*

Notably, at no point in its order did the district court discuss whether, pursuant to *Kendrick*, Plump's discharge while his sales position remained open supplied the necessary prima-facie-stage inference of discrimination. Because it ruled Plump lost at *McDonnell Douglas*'s prima-facie stage, the district court did not, in relation to Plump's discrimination claims, rule on whether Plump presented sufficient evidence from which a jury could find that GEICO's stated reason for terminating Plump—lack of a New York license—was pretextual.

**2. Retaliation Claims**[10]

In moving for summary judgment on Plump's retaliation claims, GEICO first asserted Plump failed to make a prima facie case of retaliation. As relevant here,

[10] The same general legal framework applies to Plump's FMLA and ADAAA retaliation claims. *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 538 (10th Cir. 2014). That is, both employ the burden-shifting test set out in *McDonnell Douglas*. *See supra* n.4. At the prima facie stage, both require (1) protected activity, (2) a materially adverse employment action, and (3) a causal connection between the protected activity and adverse employment action. *Foster v. Mountain Coal Co.*, 830 F.3d 1178, 1186-87 (10th Cir. 2016) (ADAAA retaliation); *Metzler*, 464 F.3d at 1171 & n.2 (FMLA retaliation).

In *Muldrow v. City of St. Louis*, the Supreme Court clarified that Title VII discrimination claimants need not, at the prima face stage, establish the existence of a *materially* adverse employment action. *See* 601 U.S. 346, 354-56 (2024). Instead, it is enough for the claimant to "show some harm respecting an identifiable term or condition of employment." *Id.* This court assumes without deciding that the standards set forth in *Foster* and *Metzler* remain valid in assessing ADAAA and FMLA retaliation claims, respectively, for three reasons. First, neither party raised any arguments on this issue. Second, GEICO does not dispute that termination of employment is a materially adverse action for purposes of a retaliation claim. *See Wells v. Colo. Dep't of Transp.*, 325 F.3d 1205, 1216 (10th Cir. 2003). Applying the *Muldrow* standard, therefore, would not alter the analysis. Third, this court has held

GEICO asserted Plump did not produce sufficient evidence of a causal connection between any activity protected by the ADAAA or FMLA and his termination. GEICO further asserted it terminated Plump because he failed to obtain a New York license and Plump failed to come forward with sufficient evidence of pretext for a jury to rule in his favor.

Plump asserted the close temporal proximity between his protected activity—his request for FMLA medical leave as an accommodation—and his termination, standing alone, met his prima facie burden of demonstrating a causal connection. As to pretext, Plump contended a jury could rule in his favor based on evidence of shifting rationales for his termination, irregularities in his attempt to transfer to a service position, GEICO's inadequate investigation of his complaints to Human Resources, and the close temporal connection between his termination and his protected activities.

The district court ruled that Plump's evidence of a close temporal proximity between his request for FMLA medical leave and his termination was sufficient to establish a prima facie case of retaliation.[11] Nevertheless, the district court ruled

---

*Muldrow* did not alter the standard for reviewing Title VII retaliation claims. *See Culp v. Remington of Montrose Golf Club, LLC*, 133 F.4th 968, 977 (10th Cir. 2025).

[11] The district court noted an important limitation to its causal-connection ruling. Although Plump's request for leave counted as protected activity, the district court refused to consider Plump's absences from work as protected activity because those absences were inconsistent with the leave requested and approved. *See* R. at 488-89 ("GEICO approved Plump for intermittent leave, which included two, one-day episodes per month. Yet, Plump did not report to work for 42 consecutive days between December 2021 and January 2022. Then, he missed more work in late

Plump failed to create a material issue of fact as to pretext. The district court first concluded the evidence established GEICO was considering terminating Plump's employment before Plump ever inquired about leave. Next, the district court rejected Plump's assertion his "strong" employment history demonstrated pretext. The district court noted Plump's performance appraisal ratings were "'good' at best." And, in any event, the district court recognized this court's precedents do not support an inference of pretext in such circumstances. R. at 491; *cf. DeWitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1307 (10th Cir. 2017) ("Evidence that the employer should not have made the termination decision—for example, that the employer was mistaken or used poor business judgment—is not sufficient to show that the employer's explanation is unworthy of credibility."). For the same reasons, the district court placed no stock in Plump's reliance on his failure to obtain the service position. Finally, the district court rejected Plump's reliance on an allegedly unfair investigation of his complaints to Human Resources. Plump's complaints to Human Resources did not implicate medical leave. Furthermore, the district court concluded "refusing to retain an employee just because he has explained why he fails to meet certain criteria is not evidence of discrimination or retaliation." R. at 492.

---

January and early February for—as he falsely told his supervisors—checking into a hospital. Because Plump abused his leave usage, it cannot be considered as a protected activity. Thus, the Court will only evaluate whether Plump's leave request was causally connected to his termination." (emphasis omitted)).

## III. DISCUSSION

### A. Standard of Review

This court "review[s] a district court's grant of summary judgment de novo, using the same standard applied by the district court pursuant to Fed. R. Civ. P. 56(a)." *Walkingstick Dixon v. Okla. ex rel. Reg'l Univ. Sys. of the Okla. Bd. of Regents*, 125 F.4th 1321, 1333 (10th Cir. 2025) (quotation omitted). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if, under the governing law, it could influence the outcome of the lawsuit. A dispute over a material fact is genuine if a rational jury could find in favor of the nonmovant on the evidence presented." *Rio Grande Found. v. Oliver*, 154 F.4th 1213, 1220 (10th Cir. 2025) (quotations and internal citation omitted). In applying this standard, this court views "the evidence and the reasonable inferences to be drawn from the evidence in the light most favorable to" Plump, "the nonmoving party." *Est. of Taylor v. Salt Lake City*, 16 F.4th 744, 756 (10th Cir. 2021) (quotation omitted).[12]

---

[12] In his opening brief, Plump contends the district court failed to view the facts in the light most favorable to him. Appellant's Opening Br. at 22-23, 36-41. For the most part, Plump complains the district court disregarded evidence relating to the validity and applicability of GEICO's "alleged" requirement that he obtain and keep a New York license. *Id.* As set out more fully below, however, *infra* Section III.B.2., Plump's factual stipulations render his appellate challenge to the validity and veracity of GEICO's New York licensure requirement illegitimate and/or immaterial. And, in any event, this court's review of a district court's grant of summary judgment is de novo. "Because this court can and will apply the correct standard on appeal, there is

**B. Discussion**

**1. Prima Facie Case of Discrimination**

Plump argues the district court erred in concluding he did not make out a prima facie case of race discrimination. In so arguing, he asserts this court's decision in *Kendrick*, 220 F.3d at 1229, provides that the termination of a qualified employee belonging to a protected class raises an inference of discrimination if the employee's position remains open. In response, GEICO asserts *Kendrick* is inapplicable because it is a failure-to-hire case, not a termination case. Furthermore, GEICO argues *Plotke*, 405 F.3d at 1100, renders the status of Plump's former position irrelevant. Plump has, by far, the best of this argument. In contrast to GEICO's claims, *Kendrick* is a case involving a discriminatory discharge and the rule of law set out therein is directly applicable to the facts of this case. *Plotke* is not to the contrary.

This court's decisions in *Kendrick*, 220 F.3d at 1229, and *Perry*, 199 F.3d at 1135, definitively hold that a plaintiff in a Title VII or § 1981 suit alleging discriminatory discharge can make out a prima facie case by showing "(1) he belongs to a protected class; (2) he was qualified for his job; (3) despite his qualifications, he was discharged; and (4) the job was not eliminated after his discharge." *Kendrick*, 220 F.3d at 1229 (citing *Perry*, 199 F.3d at 1138). *Kendrick* noted this iteration of the prima facie case arose directly from the Supreme Court's failure-to-hire decision in

---

no need to remand the matter to the district court for further proceedings." *Wright v. Portercare Adventist Health Sys.*, 52 F.4th 1243, 1254 n.16 (10th Cir. 2022).

*McDonnell Douglas*. *Id.* at 1226 (quoting *McDonnell Douglas*, 411 U.S. at 802). *Kendrick* further recognized that Supreme Court precedent indicates satisfaction of this test by a plaintiff alleging discrimination who demonstrates:

> his rejection did not result from the two most common legitimate reasons on which an employer might rely to reject a job applicant: an absolute or relative lack of qualifications or the absence of a vacancy in the job sought. Elimination of these reasons for the refusal to hire is sufficient, absent other explanation, to create an inference that the decision was a discriminatory one.

*Id.* at 1227 (quoting *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 358 n.44 (1977)); *see also id.* at 1229 (discussing *Perry*'s further amplification of these same rationales). Finally, *Kendrick* noted "[t]his circuit's earliest discriminatory discharge cases all adopted the four-part prima facie test as articulated in *McDonnell Douglas*. That is, the fourth prong only required the plaintiff to show that his or her job was not eliminated after the discharge." *Id.* at 1227; *see also id.* at 1229 (quoting *Crawford v. Ne. Okla. State Univ.*, 713 F.2d 586, 588 (10th Cir. 1983), for the following proposition: "There is no reason to apply a stricter version of the fourth part of the *McDonnell Douglas* test in a suit alleging a discriminatory discharge rather than a discriminatory failure to hire or promote." (alteration omitted)).

Thus, (1) GEICO is incorrect in arguing the rule set out in *Kendrick* only applies in the failure-to-hire context; and (2) Plump is correct in arguing that, pursuant to *Kendrick*, an inference of discrimination arose from the fact his position remained open following his termination. Indeed, this court recently rejected, as inconsistent with binding Tenth Circuit precedent, a district court ruling about the

parameters of the prima facie case that relied on arguments nearly identical to those raised by GEICO in this appeal. *Walkingstick Dixon*, 125 F.4th at 1331 (reviewing the magistrate judge's ruling, which concluded a female Native American who was qualified for the position failed to establish a prima facie case of discrimination, despite demonstrating the job remained open after her termination); *id.* at 1333 (explaining the magistrate judge adhered to this ruling on reconsideration); *id.* at 1334-35 (summarizing, inter alia, the decisions in *Kendrick* and *Perry*, recognizing there are multiple ways to "establish an inference of discrimination for a prima facie case," and holding as follows: "In sum, a plaintiff alleging wrongful termination may raise an inference of unlawful discrimination by showing that (1) she is a member of a protected class, (2) she was qualified for her job, (3) she was fired, and (4) the job was not eliminated.").

GEICO is simply wrong in arguing *Plotke* is to the contrary. GEICO relies on the following passage from *Plotke* in arguing in favor of the irrelevance of the continued existence of a job from which a qualified employee is terminated: "[W]here an employer contends the actual reason for termination in a discriminatory firing case is not elimination of the employee's position but, rather, unsatisfactory conduct, the status of the employee's former position after his or her termination is irrelevant." 405 F.3d at 1100. At first blush, and bereft of context, this sentence certainly seems to support GEICO's preferred rule. When viewed in context, however, it becomes clear *Plotke* was simply carrying on this court's tradition of treating *McDonnell Douglas*'s prima-facie-case requirement as an entirely flexible

standard. *Id.* at 1099 ("The Supreme Court recognized in *McDonnell Douglas* that the articulation of a plaintiff's prima facie case may well vary, depending on the context of the claim and the nature of the adverse employment action alleged."); *see also id.* (collecting cases for proposition *McDonnell Douglas*'s prima facie case is flexible, rather than "rigid, mechanized or ritualistic" (quotation omitted)). In that vein, *Plotke* recognized as follows: "While we have held that one way a plaintiff may establish a prima facie case is to include evidence that her job was not eliminated after her discharge, we have also noted that the elimination of the position does not necessarily eviscerate a plaintiff's claim that her discharge was motivated by discrimination." *Id.* at 1100 (quotation, emphasis, and alterations omitted). This led *Plotke* to its ultimate holding: "contrary to the district court's implicit holding that the elimination of Dr. Plotke's position was per se fatal to her case, the fourth element of a prima facie case is a flexible one that can be satisfied differently in varying scenarios." *Id.* (italics omitted). Against this backdrop, it becomes clear the passage cited by GEICO does not support its proposed rule. Given *Plotke*'s emphasis on the flexible nature of the prima facie case, and its refusal to apply it rigidly to "eviscerate a plaintiff's claim" when the job from which she was terminated is eliminated, *Plotke* cannot be read to support an equally rigid rule that views as irrelevant the fact a position remains open upon the termination of a qualified member of a protected class.

For those reasons set out above, the district court erred in concluding Plump failed to make out a prima facie case of race discrimination.[13]

**2. Pretext**

Plump argues that the district court erred in concluding he did not produce sufficient evidence of pretext to send the issue to the jury.[14] Plump can show pretext by, inter alia, demonstrating GEICO's proffered reason for the discharge "is factually false." *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 970 (10th Cir. 2017) (quotation omitted). "This is often accomplished by revealing weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered reason, such that a reasonable fact finder could deem the employer's reason

---

[13] This court's conclusion, *infra* Section III.B.2., that all of Plump's claims fail at *McDonnell Douglas*'s pretext stage allows us to avoid resolving a difficult question. GEICO urges this court to affirm, on an alternate ground, the district court's ruling Plump failed to make out a prima-facie case of racial discrimination. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1130 (10th Cir. 2011) (holding this court "may affirm on any basis supported by the record"). Based on the pretrial order's factual stipulations, GEICO asserts the record conclusively establishes Plump was not qualified for the sales position. That is, GEICO asserts the district court erred in concluding Plump satisfied the second aspect of *Kendrick*'s prima facie case. We decline to resolve this case on the alternate basis identified by GEICO. Our conclusion below that Plump failed to create a material issue of fact as to pretext is enough to fully resolve this case.

[14] Plump did not contest in the district court, and does not contest on appeal, that GEICO stated, at *McDonnell Douglas*'s second stage, a legitimate, non-discriminatory reason for Plump's termination—i.e., Plump's failure to obtain a New York license. Regardless, there is no doubt GEICO met its "exceedingly light" burden of stating a reason for the termination that is "legitimate and non-discriminatory on [its] face." *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 970 (10th Cir. 2017) (quotation omitted).

unworthy of credence." *Id.* (quotation omitted). "Evidence of pretext may . . . take a variety of . . . forms. A plaintiff may not be forced to pursue any particular means of demonstrating that a defendant's stated reasons are pretextual." *Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1168 (10th Cir. 2007). Nevertheless, in considering Plump's evidence of pretext, this court "may not second guess" GEICO's "business judgment." *DePaula*, 859 F.3d at 970 (quotation omitted). "Evidence that the employer should not have made the termination decision—for example, that the employer was mistaken or used poor business judgment—is not sufficient to show that the employer's explanation is unworthy of credibility." *Id.* at 970-71 (quotation omitted). "In determining whether the proffered reason for a decision was pretextual," this court "examine[s] the facts as they appear to the person making the decision, and do[es] not look to the plaintiff's subjective evaluation of the situation." *Id.* at 971 (emphasis and quotations omitted). "Instead of asking whether the employer's reasons were wise, fair or correct, the relevant inquiry is whether the employer honestly believed those reasons and acted in good faith upon those beliefs." *Id.* (quotations omitted).

Plump argues that a reasonable jury could find pretext from the following: (1) GEICO's "purporting to require a New York license," Appellant's Opening Br. at 44; (2) GEICO's "shifting rationales for termination," *id.* at 47; (3) GEICO's "unfair and inadequate investigation," *id.* at 48; and (4) "temporal proximity between [] Plump's FMLA leave and his termination," *id.* at 51. For those reasons set out below, this court concludes no reasonable jury could conclude that GEICO did not

honestly believe Plump's failure to obtain a New York license made him unsuitable for the sales position.

Plump asserts his evidence is sufficient for a jury to conclude GEICO's requirement of a New York license was not a bona fide job requirement but, instead, a requirement created to justify his termination. In support of this assertion, Plump identifies two strands of evidence. First, he points to evidence indicating the requirement of a New York license was not previously mentioned to him. Second, he argues a jury could conclude GEICO was to blame, either in whole or in part, for his New York licensing failure because of the failures of the Dallas Licensing Team.[15]

---

[15] To be clear, Plump does not argue GEICO's own fault in his failure to obtain a New York license is some kind of independent evidence of pretext apart from the question of the bona fide nature of the New York licensing requirement. The problems with the Dallas Licensing Team were systemic; there is no evidence in the record indicating the Dallas Licensing Team's failures were directed at depriving Plump of a necessary job qualification. Nor does Plump argue GEICO was under some kind of obligation, based on the Dallas Licensing Team's failures, to maintain his employment until he could obtain a New York license and, critically, GEICO's failure to do so would allow a jury to infer a pretextual motivation from Plump's termination. Such an argument would be entirely inconsistent with this court's precedents. *See DeWitt*, 845 F.3d at 1307 ("Evidence that the employer should not have made the termination decision—for example, that the employer was mistaken or used poor business judgment—is not sufficient to show that the employer's explanation is unworthy of credibility.").

Furthermore, the licensing department's role assisting with licensing applications does not absolve Plump of his obligation to meet GEICO's bona fide job requirements. Even accepting Plump's contention that the licensing department was entirely to blame does not change the fact he lacked the required New York license. And because Plump failed to appeal the denial of his application, Plump was prohibited from reapplying for a New York license until August 9, 2022—a year after his original application was denied. Absent an allegation that the licensing team's failures were somehow deliberate, the question of fault is beside the point.

The problem with Plump's arguments is that they are completely inconsistent with the factual stipulations set out in the pretrial order. Plump stipulated (1) that for his sales position, "he sold insurance to customers by telephone and, as such, was required to obtain and maintain licenses issued by various states' insurance departments"; (2) "New York is the second must frequent state [Plump's sales department] receives calls from, so GEICO considers it a required state license for the [department]"; and (3) he "was told that having a New York insurance license was important to his role." R. at 84. Plump's argument that the New York licensing requirement is not a bona fide job requirement is directly at odds with the fact stipulations in the pretrial order. If the stipulations are accepted as true, no jury could find that GEICO does not consider a New York license "a required state license" for the sales department where Plump was employed.

"Generally, on motions for summary judgment, courts regard stipulations of fact as admissions of the parties that are conclusive without further evidentiary support in the record." *Kirtley v. Sovereign Life Ins. Co. of Cal. (In re Durability, Inc.)*, 212 F.3d 551, 555 (10th Cir. 2000). Nevertheless, "[a]dherence to stipulated facts . . . is not categorical." *Id.* Significantly, at the summary judgment stage, a party can move the district court to withdraw stipulations and is entitled to such relief upon a showing of "good reason for the request." *Id.* at 556. Here, however, Plump never

---

Regardless of who is to blame, the factual stipulations establish that Plump failed to meet a bona fide job requirement.

asked the district court for relief from his stipulations. Nor has he asserted in this court that the district court plainly erred in failing to sua sponte grant him relief from the stipulations. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1130-31 (10th Cir. 2011) (holding that "the failure to argue for plain error and its application on appeal [] surely marks the end of the road for an argument for reversal not first presented to the district court"). Instead, Plump has simply ignored his stipulations and faulted the district court for failing to give credence to his evidence tending to disprove the veracity of those stipulations. Such an approach is particularly inapt in the summary judgment context. *Wright v. Experian Info. Sols., Inc.*, 805 F.3d 1232, 1244 n.6 (10th Cir. 2015). Plump is bound by his stipulations and, in light thereof, no reasonable jury could conclude GEICO's New York licensing requirement is not a bona fide requirement for the sales position Plump occupied.

Plump also claims a jury could find pretext based on what he alleges to be GEICO's shifting rationales for his termination. He notes that, at varying times, GEICO explored the possibility of terminating his employment for call avoidance, failure to obtain a New York license, and his "no call no show" status during his leave. The problems with Plump's arguments in these regards are multiple. First, it is not clear that GEICO's pretermination audit of Plump's job performance even amounts to shifting rationales. Plump certainly does not cite any authorities supporting such a conclusion. Instead, the only relevant authority cited by Plump is the non-binding decision of the United States District Court for the District of Kansas

in *Berkemeier v. Standard Beverage Corp.*, 171 F. Supp. 3d 1122, 1137-38 (D. Kan. 2016).

The facts of *Berkemeier* are inapposite. The plaintiff in *Berkemeier* was advised at the time of her termination that she was being let go to "cut costs." *Id.* at 1134. In response to a direct question whether her performance played a part in the termination decision, the employer responded as follows: "no. You're doing a great job and have worked really hard . . . ." *Id.* When the employer responded to the employee's charge of discrimination before the Equal Employment Opportunity Commission, however, the employer identified "performance-based reasons" for the termination. *Id.* at 1138. The employer reiterated that performance-based reason during the *Berkemeier* litigation that followed. *Id.* It was only in this context that the *Berkemeier* court concluded a jury could find pretext based on shifting rationales. *Id.* ("The timing of this change in explanation—after Plaintiff filed her EEOC complaint—could support an inference of pretext."). Moreover, *Berkemeier* determined this shifting rationale was only probative of pretext because it was coupled with a genuine fact issue as to the veracity of the employer's late-blooming performance-based rationale. *Id.* at 1137-38.

The factors supporting a finding of pretext in *Berkemeier* are not present here. GEICO did not offer shifting rationales for its decision to terminate Plump. Instead, it undertook a holistic analysis of his work performance, identified several deficiencies, and ultimately decided to terminate him based on his failure to obtain the necessary license to sell insurance in New York. It has not deviated from that basis for the

termination during any point in this litigation. Importantly, Plump has not identified any authority supporting the proposition this court's precedents dealing with shifting rationales or explanations applies in such circumstances. Nor has Plump established the existence of a genuine issue of material fact as to the bona fide nature of the New York licensing requirement that GEICO has consistently used to justify the termination. *See Jaramillo v. Colo. Jud. Dept.*, 427 F.3d 1303, 1309-10 (10th Cir. 2005) (holding, in the context of a true case of a shifting employer rationale, that "as a general rule, an employee must proffer evidence that shows each of the employer's justifications are pretextual" (quotation and alteration omitted)); *see also id.* at 1310-11 (explaining at length the shifting-rationale doctrine and holding that, generally, the "mere fact [an employer] has offered different explanations for its decision does not create a genuine question of pretext"). As explained above, no reasonable jury could conclude GEICO's New York licensing requirement is not a bona fide requirement for the sales position Plump occupied. On this record and these arguments, the fact GEICO explored several bases for terminating Plump's employment does not raise a genuine question whether the use of the New York licensing requirement to terminate Plump's employment "was an attempt to mask an illegitimate motive." *Id.* at 1312.

Plump also asserts a jury could find pretext based on GEICO's allegedly unfair and inadequate investigation of the complaints he made to Human Resources on December 10, 2021. The record is devoid of evidence from which a jury could reasonably conclude GEICO's investigation was inadequate or unfair. *See DeWitt*,

845 F.3d at 1315. The same day Plump initiated a complaint with Human Resources about treatment unrelated to race or discrimination, Human Resources initiated a meeting to discuss Plump's concerns. The subsequent investigation included witness interviews with various members of GEICO's licensing and supervision teams and several of Plump's peers. Human Resources met with Plump to discuss the results of the investigation on February 2, 2022. That same day, Beaver reminded Plump his management team would be reviewing his employment due to the denial of his New York insurance license application and invited him to submit a written statement containing any information he wanted them to consider. Plump submitted a written statement later that day. *Cf. Iweha v. State of Kansas*, 121 F.4th 1208, 1229 (10th Cir. 2024) (holding in the cat's paw context that, although not conclusive of the issue, "an employer-decisionmaker may bolster its argument that it conducted an independent investigation . . . by affording the employee-plaintiff an opportunity to explain her side of the dispute"). Plump does not identify any aspect of this process that is irregular or unfair. Instead, he argues the investigation was unfair because it reached the wrong result. Much of that argument merely reasserts GEICO's requirement of New York licensure is not bona fide. But, as set out above, this argument is inconsistent with, and foreclosed by, Plump's pretrial stipulations. In any event, evidence GEICO "should not have made the termination decision—for example, that [it] was mistaken or used poor business judgment—is not sufficient to show that [its] explanation is unworthy of credibility." *DePaula*, 859 F.3d at 970-71.

None of the three bases for pretext discussed above, whether considered individually or in combination, creates a genuine issue of fact as to pretext. Thus, under the circumstances here, Plump's Title VII and § 1981 discrimination claims necessarily fail at the third stage of *McDonnell Douglas*. *See* Appellant's Opening Br. at 51 (recognizing the final basis for a finding of pretext advanced by Plump on appeal, temporal proximity between his FMLA leave and his termination, does not relate to his discrimination claims). Nevertheless, because each of the other bases for establishing pretext identified by Plump on appeal fails, his temporal proximity argument also fails. "Although we may consider evidence of temporal proximity—typically used to establish a prima facie case—in analyzing pretext, temporal proximity alone is insufficient to raise a genuine issue of material fact concerning pretext." *DePaula*, 859 F.3d at 976. "[T]his court has refused to allow even very close temporal proximity to operate as a proxy for the evidentiary requirement that the plaintiff demonstrate pretext." *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1172 (10th Cir. 2006) (quotations and alterations omitted). Thus, "temporal proximity can support a finding of pretext only in combination with other evidence of pretext." *DePaula*, 859 F.3d at 976. "Because [Plump's] other pretext arguments fail, close temporal proximity alone is of no moment in this case." *Id.* (quotation omitted).[16] Accordingly, Plump's FMLA and ADAAA retaliation claims also fail at the third stage of *McDonnell Douglas*.

---

[16] Accordingly, it is unnecessary to address an alternate basis to affirm raised by GEICO on appeal. GEICO asserts Plump failed to establish a prima facie case of

## IV. CONCLUSION

For those reasons set out above, the United States District Court for the District of Kansas's grant of summary judgment in favor of GEICO on all of Plump's claims is hereby **AFFIRMED**.

---

retaliation. Appellee's Response Br. at 27-29. GEICO notes Plump initiated his request for FMLA leave only after he was informed his sales job was in jeopardy. In these circumstances, GEICO asserts the mere existence of a temporal proximity of eight weeks between Plump's request for FMLA leave and his termination is not enough to establish causation. The conclusion Plump failed to create a jury question as to pretext means it is unnecessary to resolve GEICO's alternative basis to affirm.